# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| AMY NORDSTROM, f/k/a Amy Numella, as Trustee for the heirs and next-of-kin of ANTHONY HAGEN, deceased,<br><br>  Plaintiff,<br><br>v.<br><br>PROBATION OFFICER TOM PROULX, in his official capacity, and ARROWHEAD REGIONAL CORRECTIONS,<br><br>  Defendants. | Civil No. 04-3215 (JRT/RLE)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFDANTS MOTION FOR SUMMARY JUDGMENT** |

      Howard L. Bolter and Robert K. Randall, **BORKON RAMSTEAD MARIANI FISHMAN & CARP, LTD.,** 5401 Gamble Drive, Suite 100, Minneapolis, MN 55416, for plaintiff.

      Dale O. Harris, **SAINT LOUIS COUNTY ATTORNEY,** 100 North Fifth Avenue West, Suite 501, Duluth, MN 55802, Steven M. Puiszis **HINSHAW & CULBERTSON**, 222 North LaSalle Street Suite 300, Chicago, IL 60601, and Thomas J. Radio, **HINSHAW & CULBERTSON**, 222 Ninth Street South, Suite 3100, Minneapolis, MN  55402, for defendants.

      Plaintiff Amy Nordstrom brought this action against defendants Arrowhead Regional Corrections ("ARC") and Probation Officer Tom Proulx ("Proulx") as Anthony Hagen's ("Hagen") next of kin, bringing claims under section 1983 and common law negligence, and seeking damages for loss of comfort, assistance, advice, guidance, aid

and protection, as well as attorneys' fees and costs. Defendants seek summary judgment on plaintiff's claims. For the reasons set forth below, the Court grants defendants' motion for summary judgment.

## BACKGROUND

Proulx is a probation officer employed by ARC. ARC provides probationary services, as well as other correctional services, for five Minnesota counties, pursuant to a Joint Powers Agreement. Proulx has been a probation officer for thirteen years.

Proulx was assigned as the probation officer to Anthony Hagen in July 2002, after Hagen had been cited twice for consumption of alcohol by a minor. Hagen pled guilty to the charges, and the Judge in that case ordered that Hagen be placed on Level I supervision (the lowest level of supervision) and six months' probation, and ordered a Rule 25 evaluation. In connection with his sentence, Hagen worked on the work crew from August 26 through August 30, 2002, and was then admitted to the Carleton Youth Shelter, which is administered by Lutheran Social Services. Hagen stayed there a few days, until September 3, 2002, and was released to his father. The Youth Shelter did not observe any risk factors with Hagen, and determined a mental health screening was not necessary.

On September 7, 2002, Proulx was conducting a "ride-along" with Cloquet police officer Erik Blessener ("Blessener"). Around 4:30 that afternoon, Proulx stopped by Hagen's house. At that time, Hagen was there with several friends, but there was no alcohol. Proulx did notice that there were several shotguns and rifles in Hagen's father's

bedroom, but Proulx knew that Hagen's father was a hunter, and was not concerned about the presence of firearms, which were a normal occurrence in that area of Minnesota. Later that evening, Proulx drove by Hagen's house at 11 p.m., saw that Hagen's car was in the driveway, and continued on.

Proulx drove by again around 3 a.m. on September 8 and saw that Hagen and his friend, Brandon Abrahamson, were coming up the walk. Blessener and Proulx stopped the boys, determined that they had been drinking, and placed them in Blessener's squad car, where Blessener issued them citations for underage drinking. Although Hagen's emotional state during this time has been described as both "angry" and "calm," there is no assertion that Hagen gave any indication that he was depressed or suicidal. Blessener and Proulx decided to take Abrahamson home, and Hagen to the Youth Shelter, because he had been drinking and his father was not at home. However, just as they were leaving Hagen's house, Blessener received a call that required him to go to a domestic dispute. Under Cloquet Police Department policy, Blessener could not take the boys with him to the disturbance, so Blessener and Proulx left the boys at Hagen's house. Proulx called Abrahamson's parents and told them to pick up Abrahamson at Hagen's house. Proulx told Hagen to wait at the house until he came back for him and "not do anything foolish."

Proulx returned to Hagen's house several hours later, but Hagen was not there, so Proulx drove around the neighborhood looking for him. Proulx found Hagen in his car near Abrahamson's house. Proulx directed Hagen to stop, but Hagen continued to drive for a short distance, then pulled over, got out of the car, and started running away. Proulx

and a police officer began running after Hagen and noticed that Hagen was carrying a gun. They told Hagen to put the gun down. Hagen then shot and killed himself.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in the absence of any genuine issue of material fact, and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).

## II. SECTION 1983 CLAIMS[1]

A claim under § 1983 must allege that conduct of a defendant acting under color of state law deprived a plaintiff of a right, privilege, or immunity secured by the constitution or the laws of the United States. *Hott v. Hennepin County*, 260 F.3d 901 (8th Cir. 2001). Plaintiff claims that Proulx's failure to prevent Hagen from committing suicide deprived Hagen of his rights under the Fourth and Fourteenth Amendments.

The state has a duty to protect an individual from harm, including suicide, when the state has placed the individual in a position of danger that the individual would not otherwise have faced ("state-created danger"), or when the state has taken the individual into custody. *See*, *e.g.*, *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989); *S.S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000). Breach of that duty may result in denial of an individual's Eighth or Fourteenth Amendment rights.

To establish a constitutional violation in the state-created danger context, the plaintiff must show that the state acted affirmatively to place someone in a position of danger that he or she would not otherwise have faced. *S.S.*, 225 F.3d at 962; *DeShaney*, 489 U.S. at 201 (holding that where the state took temporary custody of minor and later

---

[1] The parties have raised two preliminary issues. First, defendants argue under *Andrews v. Neer*, 253 F.3d 1052, 1063-64 (8th Cir. 2001), that plaintiff does not have standing to seek the relief sought in the complaint. Plaintiff responds that if she lacks standing under *Andrews* to request the damages she is currently seeking, she requests leave to amend her complaint to assert damages on behalf of Hagen in accordance with *Andrews*. Second, plaintiff requests leave under *Miskolich v. Independent School District No. 318*, 226 F. Supp. 2d 990 (D. Minn. 2002), to amend her complaint to sue Proulx in his individual as well as his official capacity, asserting that her failure to name him in his individual capacity was inadvertent.

The Court denies both requests to amend. The requested amendments would be futile.

returned him to his home, the state had no continuing constitutional duty to protect minor from harm in his home).

To establish a constitutional violation in the custodial context for failure to prevent suicide, the plaintiff must show that the individual was in custody, suffered from a serious medical need, and that the custodian acted with "deliberate indifference," such that the custodian actually knew of the individual's need, but deliberately failed to meet it. *See Hott*, 260 F.3d at 906; *Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) (affirming summary judgment because plaintiff failed to show that prison officials deliberately disregarded serious medical needs of which they were aware). Therefore, a plaintiff will not be able to show that a custodian acted with "deliberate indifference" in failing to prevent a decedent's suicide if the decedent had never threatened suicide, attempted suicide, or exhibited any signs that the decedent was suicidal. *See*, *e.g.*, *Hanrahan v. City of Norwich*, 959 F. Supp. 118, 122 (D. Conn. 1997) (granting defendant's motion for summary judgment, because there was no evidence that the decedent threatened to commit suicide or exhibited any signs or symptoms of emotional disturbance that would put the custodian on notice of a risk the decedent might try to commit suicide); *Elliott v. Cheshire County*, 940 F.2d 7, 11 (1st Cir. 1991) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference."); *Mroz v. City of Tonawanda*, 999 F. Supp. 436, 456-57 (W.D.N.Y. 1998) (granting defendant's motion for summary judgment on plaintiff's failure to prevent suicide claim, where decedent was a minor who had committed suicide

following incident in which he was arrested by police, and then released and taken home less than one hour later).

Viewing the facts in the light most favorable to the plaintiff, as the Court must, the Court finds that plaintiff has failed to set forth facts showing any violation of Hagen's constitutional rights.[2] First, as in *DeShaney*, Proulx did not expose Hagen to a dangerous situation that he would not otherwise have faced by allowing him to stay at his home. *DeShaney*, 489 U.S. at 201. Second, even if Hagen was assumed to be in custody at the time he committed suicide, Proulx did not act with "deliberate indifference," because he did not know of Hagen's condition. Hagen had never threatened or attempted to commit suicide, had never been diagnosed with mental illness, and had never exhibited any signs or symptoms that could show that he was at risk for suicide. *Hanrahan*, 959 F. Supp. at 122; *Elliott*, 940 F.2d at 11. In addition, by permitting Hagen to stay at his own home, Proulx did not remove him to an environment, such as a detention center, that might have put Hagen at a higher risk for suicide. *Cf. Hott*, 260 F.3d at 907 ("The record also reflects that placing an inmate into a cell alone increases the likelihood of suicide."). Further, plaintiff has not identified any policy that Proulx may have violated by deciding to leave Hagen at home under those circumstances.

Accordingly, the Court grants defendants' motion for summary judgment on plaintiff's section 1983 claims.

---

[2] Plaintiff also alleges that Proulx violated Hagen's Fourth Amendment rights by unreasonably releasing him from seizure. Plaintiff has not provided, and this Court has not uncovered, any case recognizing "unreasonable release from seizure" as a Fourth Amendment violation.

## III.   NEGLIGENCE

Minnesota recognizes that certain "special" relationships, such as a hospital-patient relationship, or a jailer-inmate relationship, give rise to a duty to use reasonable care to prevent an individual from committing suicide, if a reasonably prudent person under the circumstances should have anticipated a suicide attempt. *See Drake ex rel. Cotton v. Koss*, 2005 WL 19456, *6 (D. Minn. Jan. 3, 2005) (citing *Sandborg v. Blue Earth County*, 615 N.W.2d 61, 64 (Minn. 2000)) (duty of jailer) and *Mesedahl v. St. Luke's Hospital Ass'n*, 259 N.W. 819, 820 (1935) (cited in *Donaldson v. Young Women's Christian Ass'n of Duluth*, 539 N.W.2d 789, 793 (Minn. 1995)) (duty of hospital). Minnesota courts do not appear to have addressed whether the probation officer-probationee relationship constitutes a special relationship for purposes of negligence law.

Assuming, however, that a probation officer does have a "special" relationship conferring a duty of care, the Court holds that Proulx did not breach that duty, because, as set forth above, no reasonably prudent person should have anticipated that Hagen was suicidal: he had never threatened or attempted suicide, had never been diagnosed with mental illness, had never exhibited any signs or symptoms that he was suicidal, and had not been placed in an environment, such as jail, that would put him at an elevated risk for suicide. Accordingly, the Court grants defendants' motion for summary judgment on plaintiff's negligence claim.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [Docket No. 37] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   February 7, 2006                 s/ John R. Tunheim
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                            United States District Judge